2011-3094 GALLO v. TRANSPORTATION Mr. Frensford, when you're ready. Thank you, Your Honor. You can assume confidently that we're quite conversant with the facts of the case and so forth. So you can just dive right into your argument without the need to give us some background which you might otherwise. Okay. I will be happy to do that. I think the main issue here is whether Jane Gallo resumed her employment with the federal government. That's what the statute says, 8151A, an individual who resumes employment with the federal government and is entitled to certain benefits under the Federal Workers' Compensation Statute. Now Ms. Gallo has been fighting now for 11 years to correct what she views as an injustice because she was placed at the bottom of the air traffic controller pay scale when she was cured from her injury that she suffered on the job. And had she been separated, had she received benefits and also recovered, it is her belief that she would have been placed in the air traffic control band consistent with where she would have been paid in 1998. That raises the question that, to me, even assuming you're correct on your principal argument that she was, in fact, somebody that's covered by 8151A because she resumed federal employment even though she never left the federal employ. But it raises the question that, to me, is critical to the second half of your case which is what benefits she's entitled to. A has a set of benefits. B-1 has a set of benefits that are specific to people who return within one year. Your argument seems to suggest to me that B-1 and A are essentially coextensive. I would like you to explain what you get under B-1, which gives you, you get treated exactly the way you would have been had you stayed, and what you get under A, which presumably, at least the way the statute is drafted, seems to suggest fewer benefits. What are the differences? Well, first of all, under B-1, if you recover within a year, you're entitled to your old job back. Under restoration, we know, but I'm looking at the benefits and specifically the language of B-1, which says that you get all other attendant rights which the employee would have had or acquired in his former position had he not been injured or disabled, including the rights to tenure, promotion, and safeguards. A, on the other hand, talks about you get accredited to the employee for the purposes of within-grade step increases, retention purposes, and other rights and benefits based on length of service. Yes, Your Honor. What's the difference between the two? Well, the difference, obviously, under B-1, they're much broader. They include promotion. They include things like tenure. Under A, the benefits are primarily based upon length of service or within-grade increase or other rights that are based on length of service. We think, Your Honor, that Jane Gallo's entitlement here was based upon her length of service because, as Mr. Gallo testified at the hearing, when, in 1998, when this new pay system came into effect, those air traffic controllers who were converted over into it were placed in the pay band based upon their seniority, based upon their length of service. So it is our contention that, in fact, this is a length of service benefit that Ms. Gallo is entitled to. And we disagree with the board, the two members of the board that ruled against Ms. Gallo, that this is somehow a length of service benefit that is not applicable to her because, had she been employed during that time, and not on work, had she been employed as an air traffic controller and not on workers' compensation benefits, Ms. Gallo would have been placed in the middle of the band. And then, assuming that the promotion occurred in August of 2000, when it actually did, she would have been placed much higher in the band.  Mr. Bradford, there was a lot of discussion in the board's opinion about the difference between length of service in government and length of service in the position. And quite frankly, that confused me, as I found difficult where that might have connected to the statutory and regulatory scheme in which we're operating. It confused me as well, Your Honor, because under 5 CFR 353.107, it makes it clear that you're entitled, I think, to a benefit like this. As if you never left. As if you never left. Which regulation was that? 353.107. Excuse me, is it? Yes. That's it. That's the one. Service credit upon re-employment. And what's really key here, what was always key to me about this case, is that there was a lot of debate at the hearing about whether Ms. Gallo received priority consideration or not. And it became pretty clear from the testimony of the FDA witnesses that they didn't have a priority consideration procedure, and they didn't really even do anything like that. But they did re-employ Ms. Gallo in an air traffic position. And my contention is once they did that under 107, she's to be treated as if she never left. And this is consistent. But that's what B1 gives you. I mean, as you acknowledge, A gives you less than B1, and yet, oddly, the regulation seems to pull the language which is identical to B1. And so does the legislative history, Your Honor, which helps you. The legislative history is easy to explain because this is a general statement of what happens to the usual person who breaks their arm, they're out for six weeks, they come back and they get what you get under B1. But I saw no explanation in the legislative history for why there is a difference and what the difference consists of between A and B1. And there is entirely different language. And as you acknowledge at the beginning, A is clearly less beneficial than B1, and yet you're arguing based on the regulation that she gets effectively B1 treatment for benefits. But the regulation doesn't distinguish, Your Honor. Well, I understand. Are you suggesting now that A and B1 are coterminants in terms of the benefits because of the regulation? I think they're somewhat overlapping. And I think there may be times, there may be B1 benefits that you don't necessarily get if only if A is the only thing that applies. What would be an example, a specific example of a B1 benefit that would not be available under A? Well, that may be an unfair question because I'll let you, maybe you can help us on rebuttal after you've had a chance to think about that. I believe you mentioned earlier things like tenure. There are... Tenure is the same as retention rights, right? I mean, for all practical purposes, that's what tenure is for, right? You would... Tenure could be a lot of things. I mean, it could be competitive, competitive service or accepted service. It might be past your probationary period, that sort of thing. But I... You know, if a benefit... Completion of probation, would that necessarily be the same? Excuse me, Your Honor? Completion of probation is something you get under 107? I think that you would. Actually, the way it's worded, it seems to be... Well, would you get that under A? It seems to be worded broadly. I understand that. 107 is worded very, very broadly. So my question was whether or not the completion of probation benefit you get under 107, which presumably you would get under B1, would you get that under A? How does that fit in? Well, if you argue that it's a benefit that you get based upon length of service... Is it? Well, I'm not so sure that it is because you actually have to satisfactorily complete... That's what I meant. That's the point. And it isn't just a matter of passage of time. Well, I'm trying to help you with your... I just questioned you of what is there, you know, that wouldn't be an A that's in B1. Well, that's one example. Perhaps I can think of a few others. I'm thinking of reductions in force situations that occur where you get certain entitlement to time and a reduction in force or... But that would seem to be covered by retention purposes, the broad language in A. The risk situation, I would think. Well, in any event, this may be a bit of a side issue. That's the second issue. There are actually four issues. The first is resume. The second one is... You have to collect your benefits under A, under 8151A because you don't qualify under B1. We don't qualify under B1, that's correct. We qualify under B2, I believe. It sure looks on the face of it like B1 rights are greater than A rights. It does appear that way. And it looked to me like what you were asking for were B1 rights. Your Honor, I'm asking for the rights under 353.107 as I think defined in the statute and in the legislative history, and I do believe that this is an entitlement. This pay setting in 1998 occurred based on length of service, and therefore I do believe it is an A1 right, even though perhaps we can argue about what's the difference between A and B. I do think Ms. Gallo qualifies under A because of that reason. No. I'm sorry. I'm sorry. I couldn't hear you. That depends on whether we read length of service to mean length of service, as you said earlier, in the position or length of service in the government, as the Board read it. With the Board's interpretation, as I understand it, is to say, well, length of service in A means the amount of time you've been in the government. Right? That seems to be what they're saying, and yet Ms. Gallo was in the government for all of that time. Right. But the difference is she was getting whatever credits you get for being in the government, such as after three years you go to six hours, and you leave after 15 years you go to eight, etc., etc. But what she wasn't getting is those special benefits that are associated with the particular position, which would be true of, for example, a police officer or an FBI agent who have special benefits that are not common to the federal workforce. So the question is do you get under A the special benefits that attach to length of service, let's say, as a special agent of the FBI, as opposed to the general benefits that you get from being in the general civilian workforce. The Board, as I understand it, is saying you get the latter under A. You get the former under B1. And I don't quite understand that. The facts of this case are that this pay setting occurred in 1998, and people were placed in there based upon how long they had served as air traffic controllers, which is, even though it's position specific, they were working for the government. And perhaps that gets us back to the first question. I'll resume the narrow reading that the government urges. And, of course, they say and accuse us of not being able to articulate any position in which this could work. I mean, Ms. Gallo resumed her employment with the federal government as an air traffic controller. She was medically disqualified from that, and she came back to it. She left air traffic control, received another appointment in airway facilities, which did not have medical restrictions, came back in 2000. Can you look at your joint appendix for J65? This is a notification of personnel action. I understand when Ms. Gallo ceased to be the air traffic controller because of her injury on the job, and she moved over to the other job, right? Yes. So what my question is, was she separated from her appointment as an air traffic controller? She was, Your Honor, separated from her position. Well, what was her appointment? I'm looking at the language in 353.103, persons covered, which is probably the first place we should start because if you're not covered, you'll be out of luck. And 353.103 says, persons covered who was separated or furloughed from an appointment without time limitation. I think, Your Honor, she was separated from an appointment on an air traffic control position. Why don't you help us with the technical language here? You know more about this than I do. The position was the air traffic controller specialist, air traffic controller specialist. Now, what's PD? Is that the position description? I'm sorry. I'm looking in Block 7 on page 65. That is a PD. That's a specific position description that defines a particular job, is my understanding. And then the two position is a different position description, which does not have, as I understand it, medical qualifications. So what you're saying, I take it, is that this SF-50 indicates that she went from one position, i.e. one appointment, to a different appointment. That's correct. So she was separated from her appointment, but not separated from the government service. She was not separated. Obviously, she continued to work for the government service. But she received a new job, a new appointment. She sought it herself, and then when she came back in 2000, she received yet another appointment. I'm just trying to decide whether technically she is a person covered under the regulation. Under the regulation, because if you're covered under the regulation, you're not going to get uncovered because somebody said there's some special rule that you have to have been fired. Unless the regulation is invalid, because it conflicts directly with the statute. I think a fair reading of what happened to Jane Gallo is that she was separated from her initial air traffic appointment, that we had medical qualifications, and went to a different position that did not have medical qualifications, with a different position description, with a whole different pay system. And then, upon going back to, if not exactly the same position, it's a supervisory role in the same facility. And I suppose you would say that that interpretation is consistent with the harmonious with the language of the statute, that talks about a person who resumes employment because resumes in its ordinary meaning means after an interruption. Right. Of course, the problem, and you addressed this at length in your brief, but the problem raised by the government is the language, not so much the language resumed as resumed with the federal government, which suggests that you have to be resuming with the federal government something that you weren't with the federal government before. That's the language problem for me. And, of course, that's in the statute, and we have in the regulation some language that talks about receiving a lower-graded position where you don't have to leave. Yes, that's certainly helpful for you. And then we have some cases that talk about not leaving, actually leaving the government. So it seems that there's an envisioning of actually not having to be separated. And on page 19 of its brief, the defendant, the government actually acknowledges that you don't have to completely leave the government. Help me then with what is the explanation for why Congress added the prepositional phrase with the federal government, if not to cover people who had been with the federal government all along. In other words, when you resume service with the federal government, the quick lay reading of that would be, well, that's somebody who has not been with the federal government. Why is that? What is the explanation for why Congress wrote that language that way? I think, Your Honor, because this is the federal workers' compensation statute that applies to the federal government, as opposed to private sector or state or local government. I think they're trying to make it clear that we're talking about the federal government. When you come back to the federal government, this covers. And, of course, you have here where she's… But this is all in the context of restoration. So, I mean, we already are talking about a class of people who are being restored. That's the only reason you get the benefits of A, is if you are restored. And she was restored. But then the words with the federal government sort of look redundant, because you're talking about people that have been restored to positions with the federal government. You're not talking about people who have gone off into private… But I think a fair reading of that, and consistent with the congressional intent, is that that with the federal government means a position in the federal government. She's brought back. And it's a different kind of job that she couldn't do before. There's some kind of fundamental change. Okay. We'll save you a little time. We've asked a lot of questions in relation to government. Thank you. Thank you, Your Honor. Thank you, Your Honors. May it please the Court. Obviously, the government's position is that the plain meaning of Section 8151A, resume employment with the federal government, requires that the employee have separated from the federal government. Do you think the regulatory language at 353.301B at the end of that section is invalid? Then let me read it to you. It says, this subpart applies when an injured employee accepts a lower-graded position in lieu of separation and subsequently fully recovers. Is it your position that OPM's language is simply invalid because it's inconsistent with the statute? I don't believe it's inconsistent with the statute, Your Honor, because it covers a situation where someone was facing a separation. And they were, instead of completely leaving the federal government, they allowed them to take a lower-graded position. So they've been made worse off. But I don't understand why that person, the way you're understanding 8151A, would be somebody who, quote, resumes employment with the federal government. Why isn't that person exactly like Ms. Gallo, with the sole exception that Ms. Gallo actually didn't have a lower grade? Well, it would be the same position as Ms. Gallo, but with a lower grade. You understand the point I'm making, because I may not be articulating this very clearly, but it seems to me you've got a problem in that there is a potential inconsistency between saying that resumes employment with the federal government means coming from a non-federal position into a federal position when you're restored, when the regulation specifically adverts to somebody who's coming from a federal position and is restored to another federal position, the one they held before. Am I making myself clear? I understand your point, Your Honor. Okay, now, why doesn't this regulation either impeach your understanding of the statute, or why isn't it invalid? It's got to be one of those two, it seems to me. Well, I think the point is, Your Honor, that under the general, you know, the GS scale system as it existed when the law was enacted, if you were transferred to a position at the same grade, there were no rights that were lost pursuant to 8151A. Because remember, 8151A only provides for benefits based upon length of service. And if you were at a GS-14 level position and you transferred to another GS-14 level position, there are no rights that were lost. It's only these special rights, as Your Honor referred to them, that could be covered under 8151B1, which is the recovery within a year that would be subject to any change. Here in 8151A, if you've transferred to a position and you remained in the government at a similarly graded position, there's no loss of pay, there's no loss of any benefit. Well, it may be. How do you deal with the language in persons covered? 353-103. Well, 351, 301. 353-103. I'm sorry, 103, persons covered is. Separation from an appointment and previously said from a position, not separation from the government. I'm sorry, you're in 353-103. Yeah, 103. I'm sorry, Your Honor. If you look at B, the language, if you look at 353-103B, the second sentence, actually it's the end of the first sentence, talking about somebody, quote, who was separated or furloughed from an appointment without time limitation. Now, that's different language from the notion of separated from the government altogether. Right. That would appear to cover Ms. Gallup. Wouldn't you agree? She was separated from her appointment, her appointment being that of an air traffic controller. She was separated from her specific appointment. So why isn't she covered by the regulation unless, again, the regulation is invalid? I wouldn't say that. The regulation at 107 provides service upon reemployment and she was not separated from the federal government. She was not reemployed. She was reemployed as an air traffic controller when she was returned to the position to the appointment from which she had been removed. Correct, Your Honor. However, the statute, which provides only for employment with the federal government for the benefits in 8151A. There may be other benefits. Continue your position. Let me make sure I understand your position. Your position is 8151A has no applicability to someone who even at a lower paid graded position stayed with the federal government. Is that correct? When they come back to the federal government, they have to have come back from a non-federal government position. That's the position you took in the brief and that's the position the MSPB took. Are you continuing to take that position? Yes, Your Honor. So if you were in a lower graded federal position, you're not covered by 8151A. Is that correct? I don't believe so, Your Honor, and I don't believe you would be required. I don't believe it's correct to say that your position, I mean either your position is 8151A covers you only if you're coming from outside. Let's say you went home. If that's your position, I don't see how it can also be your position that 8151A covers you if you had a federal job at a lower grade. Which is it that is your position? My position is that 8151 doesn't apply if you took a lower graded position because it only provides the rights and benefits based upon length of service. And if you remain within the federal government, you don't need that protection even though you were at a lower grade. Now other portions like 8151B1 could be relevant if you recovered within a year and you took a lower graded position because of your injury and then came back within a year. It doesn't matter that 8151A doesn't apply to someone who is with the federal government. But that seems to me inconsistent with the language of the regulations which say not that it doesn't matter, but rather that this sort of person is covered. For other, and they certainly are covered, for example, under B1. For 8151A purposes? I'm sorry? For 8151A purposes? Not for 8151A, but provisions, for example, under 8151B1. But they're blocked out there automatically because this language about the person who comes back in a lower grade is expressly under B2. Look at the reg. I'm sorry, Your Honor, which provision are you saying? You should know this by heart. We shouldn't have to be telling you 353.301 has an A and it has a B and it has a C. Yes. And A is for someone who is fully recovered after one year. Correct. And that subsection does not allow an employee who took a lower graded position to come in. The lower graded position language to which the presiding judge has referred is under B, which is only for people who are fully recovered after a year. You're saying that the regulatory language does not mean that this person is covered by A, but only by B2. I'm sorry, could you restate that, Your Honor? That the regulatory language that we've been focusing on at the end of 353.301, fully recovered after one year, applies only to bring a person within B2, not to bring a person within A1 or A. I believe that's correct, Your Honor, because again, the benefits based upon length of service, if you had not separated at all from the government, you wouldn't need a provision, the benefits of subsection A, which provide benefits based upon length of service because you had no interruption in your service. And as Your Honor noted, the interpretation proposed by Ms. Gallo tries to read with the federal government out of the statute. In terms of the legislative history, Ms. Gallo cited to a general provision, setting the general intent of the statute. However, we cited to the Senate Committee on Labor and Public Welfare, which the comment in the legislative history says that it would assure injured employees who are able to return to work at some later date, in addition to the congressional record. What do you make of the fact that you trace this back, you know, back into the olden days when the Federal Personnel Manual was around, the agencies were encouraged to keep employees on their roles during the time that they were away from their job due to a disability. I was reading from the Federal Personnel Manual that one was in effect in December 1994 when they went out of existence, and they say that basically the agencies are urged to keep employees on their roles during the time period while they were away. Well, that would be consistent with the statute again, Your Honor, because... The urge to keep them on their roles means they have not been formally separated. Correct. And if they haven't been separated, then, first of all, B2 would be irrelevant, because B2 provides for priority placement in a new position. And if you haven't been separated, your position still exists, and you just return to your position without having the need for any priority placement. I was thinking of this in terms of your argument that you're not entitled, you're not restored unless you were actually physically separated, completely separated. Well, again, Your Honor, if you're on leave without pay for a period of time, extended or not, you still retain the rights and benefits based upon length of service. Your service was not interrupted with the federal government. So if you were, for example, if you had two years' seniority with the government, and you went on leave without pay for two years, when you came back at four years, they'd set your vacation pay based on four years' seniority, and you'd have four years' seniority for other purposes within grade increases and the other benefits and rights based upon length of service. But you may or may not get – I'm sorry, if you were on leave without – The basic argument is that you have to be off the payroll in order to qualify for 8151A coming back, right? When you resume employment, you resume – you might have been left on the rolls, you might not have been formally separated, but you were just not getting any pay. Correct. And in this case, again, Ms. Gallo, since she took an equivalently graded position – Everybody agrees she continued to receive a salary as a federal employee throughout the entire period. Yes, and she has the benefits based upon length of service. What she doesn't have are these specific benefits that were attributable only to air traffic controllers during the period that she was in the other position. What length of service as if she never left? I mean, what would happen if the air traffic controls hadn't converted to a different system while she was away? Then there wouldn't be anything. She would have transferred back as – well, she actually was promoted, and she was – there's testimony in the – it's in the appendix that prior to the conversion of the air traffic control system, the position that she now occupies was a GS-15 slot, so it would have been a promotion from a 14 to a 15. But even if she had – If she had gone back just as a – She would have been slotted right in. Yes, she would have been – The whole problem here is because of the conversion. Because of the conversion, exactly, Your Honor. In a sentence, I suppose the problem is, does she get either A or what she got by virtue of not having left the federal government, however you view it, or – and if you view A as only giving her the rights that federal employees generally get, the board's position. Yes, Your Honor. Versus does she get the treat me exactly as I would have been treated had I stayed and been there every day, which is D-1 benefits. Correct, Your Honor. For those reasons and the reasons stated in our brief, we ask that you affirm the opinion of the Merit Systems Protection Board. Thank you, Your Honor. I'll try to draw some distinctions between B-1 and B-2, and it was actually addressed in the first decision of this court concerning Ms. Gallo at page 1349, where it talked about the legislative history of Section 8151 broadly, and then talked about B-1 and B-2 as trying to confer two different substantive rights. In other words, the right to get your job back absolutely on B-1, and then on B-2, the right to just priority consideration. Now, we understand the difference. That's an obvious difference. But what I'm focusing on is the difference between the benefits of B-1 and the benefits of A. And my contention, Your Honor, is once – if your B-2 entitlement, which we believe Jane Gallo had here, because when she was separated from her first air traffic control position with medical requirements into an airway facilities job, then came back to an air traffic control position with medical requirements, she was then entitled to B-2 priority consideration. Of course. Nobody does that. And then once she was reemployed, once she was reemployed or restored as if she had never left to the same type of job that, in fact, actually promoted, she was entitled to be treated as if she never left. Well, but that's what she would have gotten under B-1 if she'd come back in 363 days. But why did she get that under B-2? I think that the reason she gets that under B-2 is because the OPM regulation, 353.107, looking at the legislative history, decided that if you are reemployed in your old job, you get to be treated as if you never left. You don't have a guarantee of that. Generally, is the language in the regulation that says a person is generally entitled to be treated as though he or she had never left. That's true. Somewhat qualified. Somewhat qualified. It basically makes the benefits in A superfluous. Who is going to get A rights? I mean, we've all agreed by looking at B-1 and A, there's a difference. And clearly, B-1 is broader. So give me the hypothetical of someone who is going to get A rights instead of B-1 rights that you want for your client. Well, I think the example we gave earlier, the probationary period, which is not based on length of service, which may very well be applicable, is one example. There may be some others. But I don't know that it's… Well, if it's probationary rights not based on length of service, then you're not going to get any A rights. That's correct. But you're going to be treated as if you never left. I don't see the reason for having A in the statute under your interpretation. Or at least it's a different set up. I think that in large part, because of the legislative history and because of 353-107, they are going to mostly overlap. There may be an occasional hypothetical that may… Well, maybe not. You tell me whether you think this is a distinction between A and B-1. But suppose that during the period that the employee is away, the agency decides this has been a really hard year for air traffic controllers. Let's say it's 2001, although I think it should be back then. But in any event, this has been a really hard year. Everybody is going to get a one-time $5,000 bonus. Now, would somebody get that bonus if they were under B-1 but not under A, do you think? They might get it under B-1, but they certainly would not get it under A because that's clearly not length of service. So I think we could look at a very specific situation. My key point here is those people who were converted in 1998, in fact, had their salaries set because of those benefits generally. Not air traffic control benefits, but within-grade increases, promotions that came along, and their general employment rights. And then they came in based on seniority in a pay system that was negotiated with the union and then applied to the supervisors by administrative action of the FAA. But the placement, the initial placement in 1998, occurred based upon length of service, and that's our key point. And I would also point out that this statute should be read in the context of the changes in the FAA's personnel authority that occurred in 1995. The statute was written when everyone was in the general schedule. Mr. D'Alessandro is right that, you know, it's 14 and 15, it would have been clear. But with this creation of this new pay system with great discretion given to the FAA, you have a very different circumstance and you can't actually fit this old regulation exactly into it. You have to say, well, what would have happened? And what should have happened is Jane Gallo should be treated as if she never left because she, in fact, left air traffic and she came back. I have one more question, which tells you over time and with no additional compensation. Thank you. Hours. What is it? The Hours Act. But anyway, the argument that Mr. D'Alessandro makes with respect to one of the critical regulations is that when you look at Section 353.301 in the language about part-time, that is not a problem. He says that that really only applies to eligibility for restoration under B-2. It doesn't say anything about eligibility for benefits under A. Do you have a response to that? Well, I think what that shows, Your Honor, is that taking a lower-grade position or part-time employment still entitles you to benefits under the workers' compensation laws. And you obviously don't have to separate from federal employment. Right. But he says, and of course, this is predicated on the government's and the MSPB's view of what you get under A. But he says it's really not necessary to cover people like that under A because they're already getting the benefits of tenure within grade and so forth by virtue of their being in the federal service. But it's not necessary under B-1 because if you recover within a year, you get… B-2, we're talking about. I know, but it's only stated under B-2. Right. And it's not necessary to be stated under B-1 because you get your old job back. Under B-2, where it's not clear, I think the language is put in there to make it clear that you don't have to completely separate from the federal service to get to B-2. Right. But he says that's only true for purposes of B-2. In other words, the language of A, which talks about whether you're separated completely or not, has no application to the question of the application of B. I have trouble actually drawing that distinction. When I look at A, resume employment with the federal government, and then I look at the two read together and I say, well, if A means you have to separate, then why would the regulation say, well, you're entitled to priority consideration even if you don't actually leave federal service under some circumstances. So if you qualify under B-2, then you would also get the A entitlement. But if you look at this regulation we're talking about, 353.301, it is a subpart, subpart C, compensable injury. And the language we've been worrying about says this subpart, which means subpart C, which includes A and B, applies when the injured one accepts a lower graded position. So it would seem to me literally that this person who accepts a lower graded position in lieu of actually being completely separated out applies to someone who was fully recovered within a year, and it applies to someone who is fully recovered after the year. Isn't that a correct reading of the reg? I think it would be. If that's the case, then this regulation, unless it's in balance, says you do not need to be completely separated. It does, Your Honor. I think it does say you do not need to be completely separated to have restoration rights. To have restoration rights. And coupled with the definition of person's coverage. The question is what rights? The question is what rights. Again, Mr. DelaSandra's answer, I think, to you, and I think to the question on the floor would be, and speak for him, is that this is all about restoration. This is all about B1 and B2, and that does not speak to whether a person in the B2 category, fully entitled to restoration, even if that person has been working at a lower graded position, but nonetheless doesn't get any specific benefits from A. Reason being, reason it's rational is because that person's already getting what Mr. DelaSandra and the government say are the benefits of A. Right? That's the argument. I think, though, if you're entitled under A and the benefit is based upon length of service, which we contend it was, then she should get the pay that she would have gotten had she not been injured. And she was injured at work. Okay. Thank you, Your Honor. Thank you. We thank both counsel. The case is submitted.